UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAUNDRA A.,

                Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

                Defendant.

CASE NO. C19-0842-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1974.[1] She has at least a high school education and previously worked as a microbiology technician, programmer, administrative clerk, data entry clerk, receptionist, and sales person. (AR 725-26.)

Plaintiff filed applications for DIB and SSI in October 2012, alleging disability beginning

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

July 13, 2012. (AR 248-67.) The applications were denied at the initial level and on reconsideration.

On September 25, 2014, ALJ Timothy Mangrum held a hearing, taking testimony from plaintiff, her mother, and a vocational expert (VE). (AR 30-74.) On March 18, 2015, the ALJ issued a decision finding plaintiff not disabled from July 13, 2012, through the date of the decision. (AR 17-24.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on June 27, 2016 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed to this court, which remanded for further administrative proceedings. (AR 863-73.) On remand, the Appeals Council consolidated the claims with subsequent claims filed October 25, 2016. (AR 876.) On November 14, 2018, ALJ C. Howard Prinsloo held a hearing, taking testimony from plaintiff and a vocational expert. (AR 739-73.) On February 14, 2019, the ALJ issued a decision finding plaintiff not disabled from July 13, 2012, through the date of the decision. (AR 712-28.) Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since July 13, 2012, the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's fibromyalgia, migraines, and affective disorder severe. Step three asks whether a

claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, further limited to simple, routine, repetitive tasks. She cannot climb ladders, ropes, or scaffolds or work at unprotected heights. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as an electronics assembler, electrical equipment sub-assembler, or office helper.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278

F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in weighing her testimony and the medical opinion evidence. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's subjective symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p. [2]

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence in the record. The ALJ discounted plaintiff's testimony on the grounds that her allegations were inconsistent with her activities, medical evidence of improvement with treatment, and evidence of symptom exaggeration for secondary gain. Plaintiff argues that these reasons are not clear and

---

[2] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

convincing, as required in the Ninth Circuit. *Burrell*, 775 F.3d at 1136-37. The Court finds the ALJ's consideration of plaintiff's symptom testimony supported by substantial evidence.

An ALJ appropriately considers inconsistencies or contradictions between a claimant's statements and her activities of daily living. *Thomas*, 278 F.3d at 958-59. The ALJ here found plaintiff's activities, including driving, vacuuming, cleaning the bathroom, taking out garbage, going out to eat once a week, shopping twice a week, gardening once a month, and engaging in social activities, while they did not necessarily prove she could maintain employment, contradicted allegations such as that she is essentially bedridden six and a half days out of seven.

Plaintiff contends the ALJ failed to explain how these activities contradict her testimony. On the contrary, the ALJ explicitly identified the contradiction: that plaintiff's "ability to engage in such a wide range of activities indicates she is clearly not so limited and clearly not confined to her bedroom." (AR 722.) Plaintiff also asserts her activities are consistent with her allegations, but the record shows otherwise. Plaintiff contends the ALJ should have asked her about her activities at the hearing. But plaintiff has not offered any explanation for how her activities, such as eating out once a week and shopping twice a week, could be considered consistent with her allegations of staying in her bedroom six and a half days out of seven. On this record, plaintiff has not shown harmful error in the ALJ's failure to further inquire into her activities.

Plaintiff argues the ALJ mischaracterized her activities of caring for her grandmother. Although plaintiff minimized her activities at the 2014 hearing, testifying she attempted to do housework and yardwork but "can't do anything like that" (AR 52), the ALJ reasonably relied on plaintiff's 2012 Function Report stating she did "all driving, shopping, … light housework, [and] light yard work" for her grandmother. (AR 1021.) *See Thomas*, 278 F.3d at 954 (ALJ's rational interpretation of the evidence must be upheld). Finally, plaintiff contends the ALJ relied on the

same activities this court previously held did not contradict her testimony. But the current record, including plaintiff's 2018 testimony and the ALJ's 2019 decision, differs from the record before the court on the previous appeal. At the November 2018 hearing plaintiff testified she is in her bedroom six and a half days out of seven. (AR 756.) The ALJ identified conflicting activities such as shopping twice a week for two hours at a time and eating out once a week. On this record, the ALJ properly concluded plaintiff's activities conflicted with her testimony.

Other reasons the ALJ gave, improvement with treatment and secondary gain motivation, did not meet the clear and convincing standard. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, however, reports that plaintiff was doing "okay" or medication was effective is insufficient to show that plaintiff's impairments improved to such a degree that she could work. (AR 719.) *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity" (quoted source omitted)).

"'Secondary gain' means 'external and incidental advantage derived from an illness, such as rest, gifts, personal attention, release from responsibility, and disability benefits.'" *Burrell*, 775 F.3d at 1139-40 n.5 (quoting Dorland's Illustrated Medical Dictionary 721 (29th ed.)). While a single weak example of such evidence would not, standing alone, suffice to support an adverse determination, an ALJ may consider a claimant's motivation for secondary gain. *Id.* at 1139-40. The ALJ here identified one instance where plaintiff gave "guarded effort" during physical testing, fearing she would be in greater pain the next day. (AR 1132.) This single example is insufficient to support an adverse determination. A report that plaintiff was trying to figure out an official diagnosis to reapply for disability does not show impropriety. (AR 721.) Plaintiff's resistance to

tapering off opioids because she did not tolerate tapering well and had increased pain was also not improper, where she complied fully with her doctor's instructions. (AR 1738 (treatment plan states "will continue to taper, but will slow down to allow her body to adjust").)

Impermissible reliance on erroneous reasons may, however, be found harmless where the ALJ provides other adequate reasons for discounting a claimant's testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless). Because the ALJ provided the clear and convincing reason of conflict with plaintiff's activities, inclusion of erroneous reasons was harmless.

### Medical Opinion Evidence

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester*, 81 F.3d at 830. Where doctors' opinions are contradicted, as in this case, they may only be rejected with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoted source omitted). Opinions offered by "other sources," such as an occupational therapist in this case, may be assigned less weight, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and discounted with reasons germane to the witness, *Molina v.*

*Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

<u>Vivian Stone, M.D., Juanping Sun, M.D., Ph.D., and Esther Sarantopoulos, O.T.</u>

Plaintiff maintains error in the rejection of Dr. Stone's and Dr. Sun's opinions and the "other" source opinions of Ms. Sarantopoulos that plaintiff could not even meet the demands of sedentary work. Plaintiff contends the ALJ's reasons—inconsistency with plaintiff's activities and the objective medical evidence—were rejected by this court in the prior appeal. However, the current record differs from the record for the previous appeal. While the ALJ in 2015 only cited normal findings in gait and range of motion, the ALJ in the current decision found that normal findings of muscle strength and tone are inconsistent with extreme limitations such as lifting only three pounds occasionally and never reaching in any direction with either arm (AR 22, 722, 524, 596). An ALJ may properly reject an opinion that is inconsistent with the record. *See generally Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). The ALJ in the current decision also provided more detailed analysis of plaintiff's activities. Shopping for groceries, for herself as well as her grandmother, conflicts with the opined inability to lift more than three pounds or reach in any direction with either arm. (AR 721, 52 ("when I go get my groceries I pick up what she will eat as well"). *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity). The ALJ's current decision also cites improvement in plaintiff's migraines, a reason plaintiff does not challenge. *See Thomas*, 278 F.3d at 957 (ALJ may consider improvement with treatment in discounting physician's opinion). Accordingly, the Court finds no error in the ALJ's discounting of Dr. Stone's, Dr. Sun's, and Ms. Sarantopoulos' opinions.

Archana Nair, M.D.

Plaintiff maintains error in the rejection of Dr. Nair's opinion that plaintiff could not even meet the demands of sedentary work. The ALJ gave Dr. Nair's opinion little weight on the grounds that it was unsupported by her own examination notes and based instead on plaintiff's self-reports. Plaintiff contends that, because she suffers from fibromyalgia, which is diagnosed based on self-reported symptoms, the lack of objective results is an inappropriate basis to discount Dr. Nair's opinion. However, Dr. Nair's opinion of inability to perform even sedentary work was not premised on plaintiff's fibromyalgia diagnosis. Dr. Nair opined plaintiff's fibromyalgia caused only moderate limitations in sitting and standing, while it was arthritis that caused the most severe limitations in the most areas of activity. (AR 1791.) The ALJ reasonably expected there would be objective findings regarding arthritis, in order to support such extreme limitations. On this record, the ALJ permissibly discounted Dr. Nair's opinions. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province").

Wayne Hurley, M.D.

Plaintiff argues the ALJ erred in failing to credit State agency consultant Dr. Hurley's opinion that plaintiff was limited to less than light work, lifting/carrying ten pounds maximum, standing/walking four hours per day, sitting six hours per day, and occasionally stooping, kneeling, or crouching. The ALJ discounted these limitations as inconsistent with "the minimal objective findings and the claimant's wide range of daily activities." (AR 725.)

An ALJ may reject a physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ here detailed the clinical evidence, including many largely normal or only mildly abnormal findings, and set forth his interpretation that light work, rather than sedentary work, was the appropriate limitation. The ALJ explained that Dr. Hurley's opinion was not fully consistent with the minimal objective findings.

Plaintiff has not shown any error in the ALJ's reasoning. Instead, plaintiff contends the ALJ's reasons of minimal objective findings and plaintiff's activities were rejected by this court in the previous appeal. Dr. Hurley's opinion was not at issue in the prior appeal. And in the decision at issue here, the ALJ provided greater detail regarding his evaluation of plaintiff's activities and the objective medical evidence. These were specific and legitimate reasons to discount Dr. Hurley's limitations to less than light work.

<u>Charles Wolfe, M.D.,</u>

Plaintiff argues that the ALJ erred in failing to fully credit State agency consultant Dr. Wolfe's opinion that plaintiff could perform light work, with additional postural limitations, but should avoid concentrated exposure to vibration, hazards, respiratory irritants, and extreme heat or cold. The ALJ accepted Dr. Wolfe's limitation to light work but rejected "additional limitations" as unsupported by the record, citing normal range of motion in the extremities and lack of any joint swelling. (AR 722.) The ALJ did not explain how range of motion or joint swelling relates to environmental limitations. Even if the ALJ erred, however, plaintiff has not shown that failure to include these environmental limitations is harmful. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision

bears the burden of proving harmful error) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)).  At step five, the ALJ found plaintiff could perform sample jobs including electronics assembler and office helper, which require no exposure to extreme heat or cold, vibrations, hazards, or "other" environmental conditions, and which represent a total of 100,000 positions nationwide.  *Dictionary of Occupational Titles* § 729.687-010, 1991 WL 679733; § 239.567-010, 1991 WL 672232 (G.P.O. 1991).  The Court concludes any error in failing to include Dr. Wolfe's environmental limitations in the RFC was harmless.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>19th</u> day of February, 2020.

Mary Alice Theiler  
United States Magistrate Judge